3-1-0-6-3 Roy v. City of Monroe. Mr. Marquise. Have I pronounced that correctly? Marquesi. I apologize. Mr. Marquesi. May it please the court. My name is David Marquesi. I represent the appellant Clarence Dean Roy. I'm joined by Ben Clayton at council table this morning. The main thrust of our argument on appeal is that this case should have gone to a jury and the reason it didn't is because the of the district courts erroneous grant of summary judgment as to qualified immunity that that took away our damages claims and resulted in a bench trial. So we're asking this court to vacate the final judgment and the summary judgment and remand this case for a trial by jury. The qualified immunity analysis is a two-part analysis, two-prong analysis and they're very distinct prongs. The first prong is was there a constitutional violation? That's a very necessarily fact intensive fact-specific analysis. The second prong is whether the right that was allegedly violated was clearly established at the time. That's a purely legal analysis. It's basically a survey of case law. You're trying to find case law that was directly on point at the time. In this case, the original district judge, Judge James, found that there were genuine issues of material fact as to whether there was a constitutional violation. That's the first prong. And specifically he found there are genuine issues of material fact as to whether there was probable cause to issue a summons. He then went on to the clearly established prong and found that the the alleged right was clearly established at the time. The city and Sergeant Booth moved for reconsideration and the succeeding judge, which was Judge Doty, granted reconsideration and he said in his order ultimately granting summary judgment, in its original ruling, the court determined that there are genuine issues of material fact for trial as to whether Roy suffered a violation of his First Amendment rights. The court does not reconsider that ruling. So the court confirmed its finding as to the first prong. There are genuine issues of fact as to whether there's a violation. I'm not disturbing that. He then went on to say the court's analysis in this ruling is limited to a reconsideration of the second prong of the qualified immunity analysis, whether the rights that were allegedly violated were clearly established. However, when Judge Doty went into his analysis on the clearly established prong, he, for whatever reason, made factual findings as to probable cause and ultimately concluded there was probable cause and granted qualified immunity. Well, there are no findings of fact on the clearly established prong. It's a survey of case law. You're trying to locate case law, a case that's directly on point that establishes the right that's allegedly violated. Obviously, you have to be aware of the facts of the instant case, but you're looking for a case that's on point. There's no place for findings of fact. There's no place for findings of fact. What's your best case that would inform us as to what constitutes a sufficient investigation? As I understand, and you're right, I mean, you get into the facts here, but as I understand it, the allegations of the plaintiff is that the defendant, Officer Booth, I believe is his name, that he should have done more rather than take somebody's word for what happened, that he did not conduct a crime toward Mr. Roy. Is that correct? That's correct. And what is your best case as to what he should have done that would have conformed constitutionally? Well, we cite to the Evett v. Detniff case. In this case — in that case, the Court explicitly found that the officer should have talked to the other officer. In this case, we have Officer Booth, who apparently got there after the fact. There were already several officers in the vicinity. His officers didn't talk to any of them. If he had talked to them, again, I don't think you can hang your hat on. For probable cause, I'm bound by what I knew at the time, but I didn't know much because I didn't talk to anybody or ask any questions. And what would he have learned had he talked to the other officers? To take this one step further, I assume that had he conducted that type of investigation, your position is that he would certainly not have taken the action that he did with regard to Mr. Roy. I mean, none of the officers saw anything happen. They were there for another reason. They were there because of an altercation involving one of Mr. Roy's associates. And it's not just the officers he should have talked to. We argue that he would have talked to other witnesses. The other witnesses would have testified that Mr. Roy never crossed — he never followed — he never followed Ms. Falcon. And again, we would consider that to be exculpatory evidence. Now, the important thing is Ms. Falcon testified at the criminal trial that she was followed, whether she was or not or whoever did it — Mr. Roy says it wasn't him — after Judge Booth was already there. Judge Booth. Sergeant Booth. Sergeant Booth said, the entire time I was there, Mr. Roy was standing right here. So if he had investigated further, he would have discovered it couldn't have happened. It couldn't have happened after he got there. And the testimony from the victim was it didn't happen before he got there. Now, again, our — I make that argument on appeal because I wanted to preserve the argument, but our main argument is that should have all gone to a jury. The incorrect ruling was the grant of summary judgment. Judge Doty considered — Judge Doty's order granting summary judgment cannot be enforced as written. It makes irreconcilable findings in the same order, and findings on a dispositive issue. Just explain, what is the disputed issue of material fact that the judge decided? What is the issue? What is the fact that he decided that you say is a disputed issue of material fact? He found — Judge James found that there was a disputed issue of fact as to whether Judge — Sergeant Booth had probable cause to the crux of the case. And Judge Doty, in his order, again, confirmed that finding. He said that this court's finding is that there are genuine issues of material fact as to whether there was probable cause. Both judges agreed that that was the finding of the court. Where Judge Doty erred, then, was by making factual findings in the context of the clearly established analysis. His order makes irreconcilable findings. First, he said there is a genuine issue of fact as to whether there was a violation. Then he says, on the clearly established prong, there was probable cause. They can't both be true. The ruling of the court was, by both judges, that they're — the first prong, which is the fact-intensive prong, there are genuine issues of fact on this prong. Now, as to the clearly established prong, the right, in fact, was clearly established. I'm not here going to argue today that Judge James's statement of the clearly established right was correct. I argued below and in my brief that he — it wasn't — it wasn't just because it was not — it wasn't too general. It's because it was the wrong right. It was a Fourth Amendment right. We have a First Amendment retaliation claim here. That right was clearly established by this court in Kenan v. Tejeda in 2002. And the Kenan court said explicitly, this court has stated that government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable. That's the clearly established right. That case is directly on point. It was clearly established in 2015. Do you want to — I know you have a second claim. Do you want to pivot to that one now? You challenged the ordinance directly as well, right? We challenged the ordinance on its face, correct. Well, and — and the argument there is that Judge — Judge James also granted summary judgment on — on that claim. He provided no analysis. He goes through — there's a four-pronged analysis. The restriction was within its constitutional power. The restriction furthers an important interest, et cetera. Do you agree that the ordinance is content neutral to begin with? We don't challenge the content neutrality of it, which is why we get to — to the — to the four-pronged analysis. Judge James basically set forth the analysis and then ipsa dixit said, this is what I find. Here — here's the analysis, 1, 2, 3, 4. I find 1, 2, 3, 4, and made no analysis. He — he — he dismissed our challenge to the ordinance on its face, the constitutionality ordinance with — with no analysis. Now, the court relied upon two cases, the Garner case and the Jordan case. The Garner case is a U.S. Supreme Court case. Jordan is a Louisiana Supreme Court case. Both of those cases acknowledged a limiting construction. Jordan actually quotes Garner for that proposition. In both of those cases, the court applied the limiting construction and found that, based on the evidence before them, there was no violation. Neither court addressed the constitutionality of the — Garner addressed the state statute on which the Monroe ordinance apparently was patterned. They're — they're similar. And then Jordan actually addressed the — the Monroe ordinance. Neither case addressed the constitutionality of the statute or ordinance. That was not before the court. You can't point to silence and say, well, those courts applied the limiting construction. They didn't strike it down as unconstitutional. Therefore, it's constitutional. The constitutionality — So Jordan construes the word foreseeability to — or at least that whole phrase to limit Section Sub — I guess Sub B to violent, provocative, boisterous conduct, right? Do I understand correctly, your client was held not just for B, but also under the catch-all? Correct. Okay. And I — so talk to me about the catch-all. What's — what is your constitutional objection to the catch-all phrase? Well, the — the catch-all, we — we argue, is — is vague. It does not provide — it doesn't provide specific guidance for law enforcement officers or to the public as to what's constitutional or what's not constitutional. It doesn't have the word foreseeable. It does not have the word foreseeable. So it's not subject to the Jordan limiting construction? Correct. And again, I — neither of those — both of those courts found that the — based on the evidence before them, there was no violation of the statute in the ordinance. Neither of them addressed the constitutionality. I — you can't rely upon the silence of those courts in applying the limiting construction to say, therefore, the limiting construction is constitutional. And it seems that that's what the — Hold on. Hold on. The whole point of a limiting construction is to avoid a constitutional problem. Correct. But — but I think you may have a valid point as to the catch-all. So let's talk about the catch-all. Because as I understand it, the catch-all doesn't have the limiting language that Jordan relied on. Is that your point? I believe that that's — that that's correct. And that, of course, would take you away — take you away from whatever reliance you want to put on Jordan. Right. You're not going to be able to comply here. The catch-all — the catch-all doesn't — the catch-all can't be saved by Jordan. Correct. So the question is, what saves the catch-all? Otherwise, it's unconstitutional. I take it it's this constitutional carve-out, that it's not prohibiting anything that's unconstitutional. Well, that's — everything that's — you can't say it's constitutional because the statute says it's constitutional. Have you come across any case that deals with a — that kind of carve-out language? Because I tend to — I'm certainly sympathetic that a carve-out doesn't really give the citizenry any sense of what — what is to be expected. Correct. And I — and I think that language is kind of self-serving. It doesn't serve any point. I'm not aware of a case that has addressed that. I think any court would acknowledge that that's certainly not going to save whatever follows by saying this is — this only applies constitutionally. So all we're left with is, if you do anything that disturbs or alarms the public, you've committed a violation. Right. Under the — under the catch-all. And, again, that's what we — we had argued was — was void for vagueness. I think the district court relied upon Garner's — You also have an over-breadth challenge, as I understand it. I'm sorry? You also challenged it as — challenged this as over-broad. Or am I mistaken? You said you challenged this as vague. Did you also challenge the statute as over-broad? Over-broad, yes, correct. Correct. And, again, I — that was dismissed or thrown out on summary judgment. I think the district court clearly did not have — did not even go through the analysis. I don't think you can rely upon a complete lack of analysis to throw out our facial challenge. I would also argue that if you reinstate our facial challenge, you also reinstate our due process claim. The reason that the Court gave for dismissing the due process claim was that we did not satisfy Monell, which requires one of three things, the first one being there's a written policy. You can't hook the municipality if there's not a written policy. The written policy, of course, is the ordinance. The district court said, well, I just found that the ordinance is constitutional, so you don't have a written policy. If you reinstate our facial challenge, you necessarily reinstate our due process claim because we have the written policy that we're challenging as well. Thank you. You've saved time for rebuttal. Mr. Kriegbaum? Kriegbaum, yes, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Brandon Kriegbaum, and I represent the City of Monroe and James Booth in this matter. I'll jump right into it to respond to some of the arguments, and I'll start with the most recent one, Judge Ho. First, the City disagrees that there's still an overbreadth challenge in this case. The petition or the complaint in this matter did raise an overbreadth challenge. But as this case has gone forward, and certainly in the briefing, you can search the entire brief. The word overbroad is mentioned one time, and that's in the beginning of the brief when it's responding to what the district court had done in this case. They didn't brief the standard on overbreadth. We just think that's been forfeited at this point in the case, and so the only thing is a vagueness challenge.  Thank you, Justice. Your Honor talked about a limiting construction of the statute, and the limiting language, and you're right, in the State v. Jordan case, they talked about language that would foreseeably disturb or alarm the public. The City's ordinance in the catch-all phrase, it says, in such a manner as to disturb or alarm the public. We actually think that's more restrictive than the language that was at issue in Jordan, because in Jordan, an officer could just see something that he thought might later disturb somebody walking by. In this case, we think it requires an actual disturbance of the public for it to be a violation of the Disturbing the Peace statute. So it's not something that just foreseeably could disturb the public. It's something that's done in such a manner as to actually disturb the public. And so we do think that limited construction, which requires that it be violent or boisterous or provocative in and of itself, does apply to the catch-all statute and saves it from that vagueness challenge. You're saying under B? Under catch-all. No, no. Right, right, right. But your point is under B, which has the foreseeability language, that the State would or the City wouldn't even need actual disturbance as long as you could predict it, whereas under the catch-all, there actually has to be a disturbance? Yeah. The catch-all requires an act. It's a condition of an act. Oh, sure. Both require an act. Right. But your point is by saying in such a manner as to disturb, as opposed to foreseeably disturb, disturb requires the actual disturbance. The actual disturbance. Whereas foreseeable only requires the prediction of a disturbance. The prediction of that. And so we think it's actually more narrow in our ordinance, which we think saves the constitutionality of this particular section. As Your Honor pointed out, we are unaware of any cases, and certainly the plaintiff conceded that he was unaware of any cases, that talk about this language that especially carves out and says this doesn't apply to protected conduct. My best research in this case, and I think the reason for that carve-out, it was an earlier Supreme Court case that kind of said, you know, maybe this is a little too broad and apprised to expressive conduct, and then so a couple of years later, in 1979, I believe the year was, the Monroe City Ordinance was amended to carve out what they thought might have been the problem with an earlier state statute. And so for 40 years, we've had this carve-out in here. And there's certainly no problem with having the carve-out. The question is, does that cure any problem that might otherwise exist? Are you relying on that carve-out to save the statute or to save the ordinance? Not entirely. We're relying on the limiting construction and the carve-out. We think that both provides ample guidance to officers. And I'd like to reiterate to this Court, you know, a facial challenge is especially strong medicine, and I think in a vagueness challenge, it's doubly so, because, you know, if you've got the first prong of it, it's hard to get one of these, and then on the vagueness side of it, you know, courts are hesitant to rely on speculation. And this Court has said that, I think, and as Gearson said, that, you know, we don't want to speculate about things that might or might not violate this statute, because it's a hard analysis to get into on the vagueness prong. We think with the limiting language, with this carve-out, and we're giving our officers guidance, you know, there's protected conduct out there. The whole world knows there's protected conduct, and the ordinary citizen. They know that there's protected conduct out there. This ordinance will not cover your protected conduct. And we've got this limiting construction. But as to the carve-out, I mean, you're aware of the general principle that courts don't rewrite ordinances in order to save statutes. Correct, Your Honor. But I think this Court has repeatedly said that we are bound to consider all limited constructions, you know, municipal interpretations, Supreme Court cases, State Court cases. So let's take your municipal interpretation. You're saying that disturb, without the word foreseeable, actually means you have to have an actual disturbance. Correct, Your Honor. Talk to me about that. What do you mean by disturbance? And so the disturbance would be the conduct that's violent or boisterous in itself. Take this case, for example. You know, the officer got an allegation that a young lady was chased across the street to her car, that words were directed specifically at her, that she was scared, that she feared for her safety. And so based on that, the court said, hey, or the officer said, hey, she was disturbed, her peace was disturbed. This is the kind of conduct that this ordinance prohibits. You know, also, you know, the catch-all was just one provision he relied on. He also relied on section B-2, which is not challenged here on appeal. No, understood. But at the end of the day, both have been brought. And so we can theoretically uphold an action based on B-2 but not on the catch-all. Correct, Your Honor. So I take the facts of this case being, in your view, rather extreme. Correct, Your Honor. So the alleged stalking and whatnot. But the words disturb alone, I wonder if that creates any concerns in terms of heckler's veto. I don't see any concerns of that with you, Your Honor. You know, disturbing the Peach statutes are ubiquitous. This kind of language has been used. But typically with the word foreseeable. Well, foreseeable, again, that's something that was a limited construction given by the State Supreme Court. And then, again, it was something mentioned by the United States Supreme Court in Garner v. Louisiana. And that type of interpretation has been around for 40 years. You know, there have been no other successful challenges that I'm aware of to that particular statute. I know this Court considered language similar in the current Louisiana statute in either one back in 2007 or 2008. The Court reversed for the district court to consider that. But on remand, the district court went on and considered it as applied challenge. So it never reached that particular vagueness issue. So I'm unaware of any court, at least in the Fifth Circuit or the State of Louisiana, that's held that that particular type of language is unconstitutional. I do know that the Seventh Circuit, which we didn't cite these cases in our briefs, but in doing my research, the Seventh Circuit has some cases where it talks about that type of language. And it has upheld cases like that. So we don't think there's any inherent constitutional problem with the foreseeably disturb or alarm prong of this catch-all statute. But just to be clear, then, as I understand, you're looking at you're sort of invoking Jordan to limit the catch-all. Correct. Is your view, then, I guess, it's not just foreseeable, it's also disturb or alarm. That's not just, you know, I'm disturbed by something that was said on the Senate floor politically. It's violence, boisterous. Correct. And those words are imported into disturb. Correct. You know, we interpret the catch-all phrase to involve words and conduct. There's got to be some act, there's got to be something that's done that would lead to an inherent breach of the peace, which is some of the language that the older cases use. And we think the catch-all portion is narrowly tailored to encompass only that type of conduct. If somebody is peacefully shouting on the side of the road, I mean, even shouting. If they're not actually doing something to violently or be boisterous or disturb someone else in their conduct, then we think that's perfectly constitutional. There's no history of arrests for the city of Monroe. Certainly plaintiffs had the opportunity to discovery on that point. We don't have a rash of cases out there where our officers are restricting purely innocent conduct using this catch-all phrase. You know, so the way that this ordinance is operated for the better part of 40 years that we're aware of, it's been perfectly fine in its operation. There's been, you know, just no confluence of street preachers or anybody else who were peacefully expressing their views in public parks, on sidewalks, who are, have been subjected to the statute for this type of conduct. What triggered the action by the officer here was not just the words. Correct. It was the following of the individual. Correct, Your Honor. And I think Sergeant Booth made that very clear in his testimony, I think a deposition. He said, I wouldn't have arrested him if they were just saying offensive things. These street preachers are out there all the time. They've been preaching for years at this location or at least a year at this location. We've had no issues with that. It was the words plus the conduct in this case. What's the conduct that crossed the line as far as you're concerned? And so if you look at Jessica Falcon's testimony. This person was acquitted. Yes, they were acquitted. But although I would note that the city court judge who acquitted him in his reasons said, hey, I really think you did this. I think it's more likely than not that you did this. I just don't think the city has proven its case beyond a reasonable doubt. And so he gave a caution to Mr. Roy, don't engage in this kind of conduct anymore, but I'm finding you not guilty. So we think in this case, if you look at Jessica Falcon's testimony, and I think the record at 581 and 582 has a good synopsis of what her testimony is. She says, this man followed me across the street. He was within one to two feet of me. Your Honor, one to two feet is the length of my notepad from my head. You know, that's two feet away from me. The faster I walked, the closer he got. He was directing things directly at me. He was saying, you're a whore. You're a little lesbo. Your father's the devil. Now, we understand Mr. Roy disputes all of this and claims that he's innocent of the conduct, but probable cause is a different analysis than actual guilt or innocence. And so if you would like me to, I'll go ahead and turn to that particular case. Your point is the triggering conduct was obviously not words alone. It's following. It's words plus actions. Words plus conduct. What actions? I just want to be very specific. The actions of following her across the street, getting closer to her, speeding up, getting right behind her within one to two feet, and saying these things directed at her. We understand that there's a difference, and I think the case law, the Supreme Court and other courts have made a very big emphasis. There's a difference between someone shouting on a street corner versus directing something directly at somebody. And I think we cited in the district court below what I thought was a very good opinion on that issue, and that was the Gillis case, where from the Third Circuit, which had a Christian lesbian, and one of these, I guess, street preachers or whatever you want to call them, directed specific statements to this woman. He said, you're a lesbian. You're a Christian lesbian. You're a little lesbo. You know, you lay with the dogs. And the Third Circuit said that changed the analysis right then, because you weren't open air preaching. You weren't espousing your views. You then turned and you directed your words at somebody, and that rendered those fighting words, which were unprotected in that context. And so we think that a reasonable officer who gets this, you know, report from a victim, who comes to him, she's shaking, she's scared, you know, she relays this to him on the scene and identifies the perpetrator and says, this is what happened. We think that that's sufficient under this ordinance to establish probable cause. No, that's why I want to be precise, because I thought you were saying earlier that it wasn't the speech alone. Right. It was the conduct. But you're saying under the Third Circuit, you could theoretically read Szaplinski to cover the words alone? Correct. Correct. We think there's more in this case, but we think we can get saved under the, you know, under what other courts have held, that the words alone could have been done. But we do think that there were words and conduct in this particular case, the conduct being the following. But the words alone, in your view, it sounds like it's hypothetical, but the words alone would have been enough, in your view, under Szaplinski? Under Szaplinski, yes, and under the Gillis case in the Third Circuit, and we started an Eighth Circuit case, not an Eighth Circuit, an Eighth Circuit district court case as well for some similar language that was held to be fighting words. But we think the words and the conduct in this case is what matters. We think we can win on the easier problem that the words alone were enough, but we also think that the words plus conduct gave the officer more than enough room to conclude that probable cause existed. Let me ask you before you move on to the next issue, with regard to the as-applied challenge. Correct. Is it appropriate for the Court to engage in a probable cause evaluation in connection with the as-applied claim? So we think it is, Your Honor. We think that probable cause is a bar to the as-applied challenge, because if you have probable cause to arrest, then there is no constitutional violation that occurred. And what I want to make clear is the Supreme Court, in a different context just a few months ago, held that probable cause is a bar to most, if not all, First Amendment retaliation claims. And I think that would include Neves v. Bartlett, which just came out a few months ago. And so I do think that that would also reach the probable cause analysis in the as-applied claim. And in the plaintiff's briefing, the sole thing that they hung their hat on with respect to the as-applied challenge was there was no probable cause in this case, so I win on the as-applied challenge. Turning to the issue of probable cause and qualified immunity, we don't think that there is any inconsistency in the judge's rulings in this case. Judge James initially held that there were issues of fact concerning probable cause. To address your question, Judge Jolly, he did not point to what specific fact itself was at issue. Judge James gave a list of facts in his ruling that he found were, you know, material in this case. And the only fact that we could find that was genuinely disputed in that list of facts was the fact that Roy claims he didn't commit the crime. Of course, whether Roy is guilty or innocent in and of itself doesn't determine whether or not there was probable cause in this particular case. As this Court is well familiar, probable cause is a totality of the circumstances analysis, and it's one that's viewed objectively without the benefit of hindsight. And so we think that there absolutely was probable cause in this case, and the district court did when it ultimately conducted a bench trial in this case and said, as a matter of law, there's probable cause. You know, the facts, which you're well familiar with, that I won't run into detail, again, following her across the street, saying these things, directing at her, scaring her. He corroborated, the corroboration in this case was his visual appearance of her. You know, they cited Evett for the proposition that Officer Booth or Sergeant Booth was required to do more, but Evett, I think, is a much different case than this. This Court highlighted in Evett that he was relying on just a hunch, that the officer in that case, you know, had nothing to support his claim other than just his bare hunch that something might have gone wrong. Here, the officer was on the scene. This victim came up to him. He observed her. He spoke with her. That's the classic witness identification of their attacker, of their suspect, or whoever it is, on the scene. It has the indicia of reliability. There's nothing that Officer Booth knew at the time he made this decision to issue a summons that would have caused him to think that Jessica Falcon was a liar, that she went around the corner and faked tears to come up to his vehicle. None of that would have caused him to dissipate probable cause. And the district court found, I think, in both rulings, both before the change in district judge and after the change in district judge, that there was nothing that Falcon, you know, there was nothing to lead Officer Booth to believe that Falcon was making up this story. And so based on that information, what he knew on the scene, we certainly think there was probable cause. As a matter of fact, even if you disagree that there was probable cause, then we get to the qualified immunity, the second prong, which was, was there a reasonable belief that there was probable cause? If there was an actual probable cause, I don't know that there are many cases with the facts like this one that a reasonable officer, any objectively reasonable officer sitting on the scene wouldn't believe that, hey, this particular conduct, this particular word, something happened, and indeed, Officer Booth went to his vehicle and looked up the statutes, compared it with the simple assault statute, compared it to this disturbing the peace statute. And so he did what I think a reasonable officer would do in this circumstance to make sure he got this right. And so we think that at least there's qualified immunity. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. And I don't think any rational person looking at this, or I don't think I think looking at this, that Sergeant Booth was plainly incompetent or that he knowingly violated the law in this situation. I mean, is it more appropriate or more convincing to decide this case on the basis of qualified immunity or probable cause? I think the easiest path to affirmance in this case is to decide that there was probable cause. We recognize that that's a muddied issue at the district court below, but as you noted in an earlier case, Judge Ho, you can affirm on any basis that's revealed by the record, and we think that there's certainly ample room and ample evidence in this record to determine that actual probable cause existed. If you determine that actual probable cause existed, rather than going with the reasonable belief, then underneath versus Bartlett, almost every claim drops. There's no constitutional violation for the Fourteenth Amendment claim for lack of training because there was probable cause. There's no First Amendment retaliation claim. We think the as-applied challenge goes by the wayside, and so the dominoes fall with that particular determination. But if you get to the reasonable belief, the reasonable belief prong, we also think that the appeal in this case is somewhat limited and foreclosed in a sense in that the judge did conduct a bidtrial on the injunctive issues and held that there was actual probable cause and that no injunction was warranted on that basis. He found that that defeated the probable as-applied challenge following that, and there was no real effort to appeal what the district court judge did at the actual equitable relief phase of this trial. And so we think in both instances, you know, the easiest path to affirmance is probable cause. You still get there if you go with qualified immunity because of the district court's ---- Scalia. Well, wouldn't it be easier to just simply say that in any event he had a reasonable belief, and the reasonable belief leads to the fact that he's entitled to qualified immunity? McAllister. Because actual probable cause defeats some of the equitable claims as well at the  Reasonable belief, you then still have to get into the murky waters of the as-applied challenge, which you have the district court judges later ruling, but I think you avoid the murky waters of the equitable claims if you find that there was probable cause at the outset. If you decide more than one issue in this case. Correct. Correct. If you decide the probable cause issue, like I said, a lot of the dominoes fall right then, and you don't have to go much further than that. And we think there's ample ground in this particular record to do that. And so I see that my time is running up, Your Honors. Again, the 14th Amendment claim, they mentioned briefly in passing, there is record of support for the fact that our officers are trained in the First Amendment. They, in opposition to that, all the defendant just pointed out and said was, that's not enough. We don't think that's enough to overcome a motion for summary judgment that's appointed with evidence in the record. And so, in closing, Your Honors, you know, like I said a minute ago, qualified immunity protects all but the knowing, the knowingly, the knowing violators of the law and the plainly incompetent. Sergeant Booth was neither of those in this case. The city's ordinance has stood undisturbed for 40 years. There's been no rash of challenges. There's been no just claim after claim of constitutional violation. I think it would surprise many to find that this particular ordinance, where the catch-all phrase has been unconstitutional for 40 years and no one knew it. It may be the case, but we think that would be a surprising result. And in closing, I would ask that this Court please affirm the district court on all. One last question. Are there other jurisdictions you're aware of that have used this catch-all language? We are not, Your Honor. We are not. With that, please affirm the district court. Thank you very much. Thank you. Mr. Marchese, you've got three minutes. Well, as to the facial challenge, I certainly don't think the fact that the ordinance has not been challenged for 40 years is anything to rely on to state that it's constitutional. We challenged it on its face. Now, we're talking about the language of the ordinance here today. I think the problem is the district court should have and the district court didn't. The district court found that it was constitutional and didn't engage in any of the analysis that we're engaging in now. The district court seemed to hang its hat on Garner and Jordan, which, as I said before, didn't pass on the constitutionality of the ordinance or the statute. And as we were discussing, Jordan involves different language. In addition, I think that in such a manner as to disturb or alarm the public is followed up by or make such a disturbance imminent, well, I think that kind of takes you away from there has to be actual action involved or to make such a disturbance imminent. To the extent we're going to discuss the language here today, I think that's important because it says or. So that completely changes the original statement in such a manner as, again, this is all analysis that the district court should have engaged in and did not. The district court granted summary judgment on our facial challenge based on no sufficient grounds. And I think the statement that this court, this court cannot affirm based on the finding that there was probable cause for the simple reason that the finding of the district court was, both judges, Judge James and Judge Doty was, there are genuine issues of material fact as to whether there's probable cause. That was the reason that Judge James denied summary judgment on qualified immunity. Judge Doty reaffirmed that finding and said, I'm not disturbing that. And then went into the purely, what was supposed to be the purely legal. Again, I mean, I'm trying to pin you down on what is the disputed issue. Well, the district court went through, Roy denied making the statements or taking the actions alleged by Falcon. No one besides Falcon and Roy actually heard their conversation. Sergeant Booth, this is all on page 860 of the record. Sergeant Booth undertook no investigation other than speaking with Falcon. There was a long history of demonstrations at the intersection. On the night in question, complaints by both Roy and his followers and customers of the bars had been handled by the police department. Those are the findings of fact that Judge James made. Obviously, those are the findings of fact that he determined created an issue of fact for trial. Judge Doty, again, did not disturb that. So there's nothing to affirm. You can't affirm the finding of probable cause when neither district judge found that there was probable cause. The final ruling of the court was there are issues of fact as to whether there was probable cause, meaning whether there was a violation. Thank you. I'm done. We have your argument. The case is submitted. And this concludes our panel's cases for the morning. Thank you.